1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ZENA SMITH, | ) Case No. ED CV 06-00904-VBK |
| Plaintiff, | ) MEMORANDUM OPINION, AND ORDER<br>) THEREON |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner<br>of Social Security, | ) |
| Defendant. | ) |

        Plaintiff Zena Smith ("Plaintiff"), as guardian <u>ad</u> <u>litem</u> for
her minor child, filed this action pursuant to 42 U.S.C. §405(g),
seeking review of the denial of the Commissioner of Social
Security ("Commissioner") of her application for Supplemental
Security Income ("SSI") under the provisions of Title XVI of the
Social Security Act ("Act").   Plaintiff seeks reversal of the
Commissioner's decision, or in the alternative, for the Court to
remand the matter for a new hearing.   Defendant requests that
the Court affirm the Commissioner's final decision.

        Plaintiff filed her Complaint on August 22, 2006.   The
Commissioner's Answer and Certified Administrative Record were
filed on February 16, 2007.   Thereafter, a Joint Stipulation

1    ("JS") was submitted on May 25, 2007.

2        The parties have consented to proceed before Magistrate Judge

3    Victor B. Kenton, pursuant to 28 U.S.C. §636.    This Memorandum

4    Opinion shall constitute the Court's findings of fact and

5    conclusions of law.

6

7                                **I**

8                            **BACKGROUND**

9        Plaintiff filed an application on behalf of her child for

10   Supplemental Security Income benefits on June 28, 2004, alleging

11   an onset date of July 1, 2002. (Administrative Record ["AR"] 64-

12   66.)    Plaintiff's application was denied administratively on

13   August 12, 2004 and on reconsideration on December 2, 2004 (AR 36,

14   43.)    Plaintiff then requested a hearing before an Administrative

15   Law Judge ("ALJ"), which was held in San Bernardino, California on

16   February 7, 2006. (AR 48, 326-48.)    At that hearing, Plaintiff was

17   represented by counsel (the same counsel who represents her in

18   this action), and she and the child testified.    In addition,

19   testimony was taken from a psychologist, Dr. Malancharuvil, in his

20   capacity as a medical expert ("ME").    An unfavorable decision was

21   issued by the ALJ on April 27, 2006. (AR 11-20.)    Plaintiff's

22   counsel requested review by the Appeals Council on May 4, 2006.

23   (AR 7.)    The Appeals Council denied review on June 29, 2006 (AR

24   4), thus rendering the ALJ's decision the final decision of the

25   Commissioner.    Plaintiff then requested this judicial review under

26   42 U.S.C. §405(g).

27        As a procedural note, a prior application was filed by

28   Plaintiff on January 10, 2003 that resulted in an unfavorable

                                  2

1  decision dated January 15, 2004. (AR 25-33.)  The Appeals Council
2  denied review. (AR 11.)
3      In the JS, Plaintiff and Defendant raise these issues:
4      1.    Whether the ALJ properly considered the lay witness
5          testimony of Plaintiff in determining the severity of
6          the child's disability;
7      2.    Whether the ALJ properly considered the medical report
8          and notes of the child's treating psychiatrist, Samuel
9          E. Dey, Jr., M.D.; and
10     3.    Whether the ALJ should have consulted a pediatric
11         psychiatrist, child psychologist, or similar
12         professional to review the entire case pursuant to 42
13         U.S.C. §1382(c)(a)(3)(1).
14
15            **II**
16     **STANDARD OF REVIEW**
17     The court, pursuant to 42 U.S.C. §405(g), has the authority
18 to review the Commissioner's decision denying Plaintiff's
19 disability benefits to determine whether his findings are
20 supported by substantial evidence and whether the Commissioner
21 used the proper legal standards in reaching his decision. Meanel
22 v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater,
23 157 F.3d 715, 720 (9th Cir. 1998).
24     A child is "disabled" under the Social Security Act if she
25 has a medically determinable physical or mental impairment or
26 combination of impairments that causes marked and severe
27 functional limitations, and that can be expected to cause death or
28 that has lasted or can be expected to last for a continuous period

1    of not less than 12 months.  20 C.F.R. §416.906.

2         Regulations promulgated by the Commissioner establish a

3    three-step sequential evaluation process to be followed by the ALJ

4    in a childhood disability case.  20 C.F.R. §416.924(a).  In the

5    **First Step**, the ALJ must determine whether the child is currently

6    engaged in substantial gainful activity; if so, a finding of

7    nondisability is made and the claim is denied.  (<u>Id.</u>)   If the

8    child is not currently engaged in substantial gainful activity, in

9    the **Second Step**, the ALJ must determine whether the child has a

10   severe impairment or combination of impairments significantly

11   limiting her from performing basic work activities; if not, a

12   finding of nondisability is made and the claim is denied.  (<u>Id.</u>)

13   If the child has a severe impairment, in the **Third Step**, the ALJ

14   must compare the impairment to those impairments in the Listing of

15   Impairments ("Listing"), 20 C.F.R. §404, Subpart P, App. 1; if the

16   impairment meets, medically equals or functionally equals an

17   impairment in the Listing - and if the impairment satisfies the

18   duration requirement - disability is conclusively presumed and

19   benefits are awarded.  20 C.F.R. §416.924(d)(1).

20        At **Step One**, the ALJ found that the child has not engaged in

21   substantial gainful activity. (AR 13.)   At **Step Two**, the ALJ

22   determined that the child suffers a severe impairment because her

23   history of anxiety disorder causes more than minimal functional

24   limitations.  (AR 14.)  At **Step Three**, the ALJ determined that the

25   child's anxiety disorder does not meet or medically equal any of

26   the Listings because there was no evidence of marked distress

27   and/or recurrent severe panic attacks that are required to satisfy

28   the Anxiety Disorder Listing under 20 C.F.R. §404, Subpt. P, App.

1 §112.06 (<u>Id.</u>)   The ALJ also concluded that the child's impairment is not functionally equivalent to the Listing for Anxiety Disorder. (AR 19.)

Determining functional equivalence requires an assessment of the child's limitations in six broad areas of functioning called "domains." 20 C.F.R. §416.926a.  These domains are (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. (<u>Id.</u>)

In order to be functionally equivalent, the impairment must be of "listing-level severity" and must result in "marked" limitations in at least two of the aforementioned domains or in an "extreme" limitation in at least one domain. (<u>Id.</u>)  The baseline of comparison for determining marked or extreme limitations is how "appropriately, effectively, and independently [the child] perform[s] [her] activities compared to the performance of other children [her] age who do not have impairments." (<u>Id.</u>)  Using this framework, the ALJ found that the child has "less than marked" or "no limitation" in all of the domains. (AR 16-19).

Thus, the ALJ found that the child was not under a disability as defined in the Act at any time through the date of the decision, under 20 C.F.R. §416.924(d)(2). (AR 19.)

//

//

//

//

//

5

III

**DISCUSSION**

A.   **Remand Is Required Because The ALJ Failed To Consider The Clinical Findings Of The Child's Treating Psychiatrist.**

    1.   **Applicable Law.**

The ALJ is not required to discuss evidence that is neither significant nor probative so long as the decision is based on substantial evidence. (See Howard Ex. Rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).)

The Ninth Circuit has also enunciated clear standards to guide the Commissioner in the evaluation of the opinion of a treating physician.  Greater weight is accorded to the opinion of a treating physician than to that of a medical expert because the former "is employed to cure and has a greater opportunity to know and observe the patient . . ." Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

    2.   **The ALJ Failed To Discuss The Opinion Of The Treating Psychiatrist.**

The ALJ failed to discuss the reports of the child's treating psychiatrist Dr. Samuel E. Dey, Jr.  Dr. Dey's diagnosis and reports provide long-term, medically-documented evidence of her hallucinations and functional limitations.  On December 29, 2004, Dr. Dey diagnosed the child as suffering from "Bipolar Disorder, Mixed", assigned her a GAF (Global Assessment of Functioning)

6

1  score of 50, and continued her on the anti-psychotic medication
2  Risperdal[1]. (AR 294.)  Dr. Dey then treated the child for almost
3  a year, from December 2004 until December 2005 (AR 294, 279),
4  keeping records of her progress and of the clinical effects of the
5  Risperdal on her hallucinations and anxiety symptoms.

6      Dr. Dey's diagnosis and reports are also probative because
7  they supplement the record of the child's mental health history,
8  one which started when she began meeting with clinician Sueann
9  Kenney-Noziska at the Riverside County Mental Health facility on
10 December 30, 2002. (AR 241.)  As early as February of 2003, her
11 physician Dr. Gamboa, who was working in conjunction with Kenney-
12 Noziska, noted that she experienced auditory hallucinations. (AR
13 231.)  Then, in July 2004, Kenney-Noziska sent Dr. Gamboa a list
14 of nine visual hallucinations the child reported experiencing,
15 including that of a man putting a bomb in the gas tank of the car.
16 (AR 172.)  Dr. Dey's notes then track the child's mental health
17 narrative from the end of 2004 through the year preceding the
18 ALJ's decision and are thus relevant to an evaluation of her
19 disability.

20     By omitting Dr. Dey's reports from his decision, the ALJ
21 disregarded evidence of the child's diagnosis, administration of
22 and response to anti-psychotic medications, and mental health
23 history.  By failing to consider such significant evidence –
24 especially given the dearth of other conclusive mental health
25 reports – the ALJ violated the mandates of both <u>Howard</u> and
26 <u>Spraque</u>.  Remand is required to appropriately consider the reports
27
28      [1] <u>See</u> <www.drugs.com/risperdal.html>

7

1    and notes of Dr. Dey in making a determination regarding the
2    existence of the child's disability.

4    **B.    Remand Is Required Because The ALJ Improperly Dismissed**
5          **The Lay Witness Testimony Of The Plaintiff**.

7          **1.    Applicable Law**.

8          The Ninth Circuit has noted the relevance of lay witness
9    testimony, especially by a close family member, in providing
10   insight into a "Plaintiff's symptoms and daily activities."
11   (Sprague, 812 F.2d at 1232.)   Disregard of this lay witness
12   evidence "violates the Secretary's regulation that he will
13   consider observations by non-medical sources as to how an
14   impairment affects a Plaintiff's ability to work." 20 C.F.R.
15   §404.1513(e)(2). (Id.)  But while such lay-witness testimony is
16   valuable, it may be rejected if the ALJ offers "reasons that are
17   germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919
18   (9th Cir. 1993).

20         **2.    Plaintiff's Mother's Lay Witness Testimony Should**
21            **Not Have Been Rejected**.

22         In rejecting Plaintiff's testimony, the ALJ provided this
23   rationale, in pertinent part:

24              "Although [Plaintiff] described the [the child]
25         as incapable of performing many of her activities of
26         daily living secondary to her hallucinations and
27         anxiety, the Administrative Judge finds that there is
28         no objective evidence of [the child's] inability to

8

perform her activities of daily living, etc. beyond what would be expected of a young girl her age. Perhaps [Plaintiff's] expectations are unrealistic. <u>No professional has provided a basis for her allegations.</u>"(emphasis added) (AR 16.)

Dr. Dey's reports do, in fact, provide a basis for Plaintiff's testimony.[2] She noted in her Child Function Report that, "sometimes [the child's] hallucinations - have her scared so scared that she can't talk only cry." (AR 72.) Plaintiff further recollected that the child "went from <u>Evil Man, to 10 yr girl, to Angels, to ghosts, to Cats, to dogs, and now little Black men</u>...she also says they make faces, talk to her, hit her, bite her." (emphasis in original) (AR 78.) Recounting a specific experience, Plaintiff wrote that once "[the child] saw man put bomb in my car - I convinced her it wasn't no bomb - but she insist was man - so it moved on to being afraid of this man till finally he come to mail box - then my laundry room - then my bathroom her room at school etc . . ." (AR 89-90.) The child, in fact, drew pictures of "the man" at a therapy session on March 8, 2004. (AR 193-94.)

Plaintiff also testified at the hearing and described in her reports the child's impaired functional abilities, indicating that the child is "afraid to be around a lot of people - she afraid not

_____

[2] While Dr. Dey's reports do not, effectively, corroborate the extent of functional limitations described by Plaintiff, neither do they contradict Plaintiff's descriptions. Further development of the record should resolve this issue. (See Section C, infra.)

too" (AR 75), cannot take a bath or shower without help (AR 76), suffers "nite terrors, daytime terrors too" (AR 78), and "stutters sometimes a lot sometimes a little" (AR 71).  Dr. Dey's assignment of a GAF score of 50 assessed the child as  having moderate to severe functional limitations and a 25 point decrease in functional ability from the prior year. (AR 294.)

Remand is necessary to ensure that Plaintiff's evidence is properly considered in the evaluation of the child's disability.

**C.**  **Remand Is Required In Order To Fully And Fairly Develop The Record.**

**1.**  **The ME's Testimony Is Insufficient As A Basis For Finding Non-Disability.**

At the hearing, the ME testified that the anxiety and hallucinatory symptoms the child suffers are merely "residual symptoms of the sexual abuse" she suffered at age five or six. (AR 13, 344.) He further opined that it is "typical of young girls of [her] age [to] have imaginary friends" (AR 345) and concluded that she suffers "no . . . type of psychotic disorder" (AR 345) or "significant disturbance." (AR 344.)

The ME never provided a basis for his conclusion that it is the normal experience of an eleven-year old girl to have these types of recurring hallucinations, or that they are merely typical residual symptoms of sexual abuse.  Moreover, other than stating that he "read and reviewed the record," the ME failed to identify the specific evidence he used to arrive at his conclusions.  The ME made only passing mention of the reports of the treating

10

1   physician; his only comment was to remark that Dr. Dey's reports
2   of her hallucinations were "problematic." (AR, 347.)  The ME never
3   explained why they were problematic or, indeed, what he meant by
4   that.[3]

5       Moreover, the ME mischaracterized the evidence in concluding
6   that "the fact that [the hallucinations are] not disturbing and
7   [are] friendly is suggestive of no malady . . ." (AR 345.)  The ME
8   did not, apparently, consider the evidence provided by the child,
9   Plaintiff, and Dr. Dey's notes, which support a conclusion that
10  many of the hallucinations appear to be far from innocuous or
11  friendly.   For example, Plaintiff wrote in her Child Function
12  Report that "once [the child] ran out shower naked cause that man
13  was in there - almost heart attack." (AR 81.)  This observation
14  was corroborated by Dr. Dey's February 2005 report: "patient
15  hallucinates and sees a man who will chase her.  At times he comes
16  into the shower with her." (AR 291.)  The child also stated in her
17  interview with a school psychologist that her hallucinations were
18  often upsetting: she began hearing voices in the second grade
19  which would tell her to hurt others. (AR 304.)

20      The ME further mischaracterized the record when he testified
21  that, as of December 2005, the child was experiencing no
22  hallucinations and was "well recovered according to the records."
23  (AR 344, 345.)  In his December 7, 2005 report, Dr. Dey noted that
24  the child "discussed her concerns with hallucinations she keeps

25

26          [3]    Moreover, it would appear that Dr. Malancharuvil, a
27  psychologist, was unqualified by training to evaluate the opinion
    of a treating psychiatrist, or to assess the impact of the
28  administration of an anti-psychotic medication.

11

having." (AR 279.)

### 2. The Record Must Be Developed In Order To Determine The Child's Functional Equivalence To A Listing.

A more complete development of the record is needed to determine the child's functional limitations. "When medical source notes appear to be incomplete, recontact with the source should be made to attempt to obtain . . . all medical evidence from the treating source necessary to make a determination of impairment severity . . ." (SSR 85-16.) Therefore, the ALJ should recontact Dr. Dey and/or obtain an independent consultative evaluation by a qualified psychiatrist in order to provide a basis for determining the extent of the child's functional limitations in the six relevant domains.

For the foregoing reasons, the decision of the Commissioner is reversed and the matter is remanded for a new hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: _July 13, 2007_                    _____/s/_____
                                                      VICTOR B. KENTON
                                                      UNITED STATES MAGISTRATE JUDGE